**Case No. 25-1730**

———————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————

**PSEG RENEWABLE TRANSMISSION LLC**

Plaintiff-Appellee,

v.

**ARENTZ FAMILY, LP**

Defendants-Appellants.

———————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

———————

## BRIEF OF *AMICUS CURIAE*
## COUNTY COMMISSIONERS OF CARROLL COUNTY, MARYLAND
## IN SUPPORT OF DEFENDANTS-APPELLANTS

———————

Timothy F. Maloney, Esq.
Alyse L. Prawde, Esq.
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
Phone: (301) 220-2200
*Counsel for Amicus Curiae*
*County Commissioners of*
*Carroll County, Maryland*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTERESTS OF THE *AMICUS CURIAE* .......................................... 1

AUTHORSHIP STATEMENT ............................................... 3

SUMMARY OF THE ARGUMENT .................................................. 3

ARGUMENT ..................................................................................... 5

   I.    PSEG is not likely to succeed on the merits of its claim as it does
        not have the power of eminent domain and therefore cannot access
        Appellants' properties under § 12-111 of the Real Property Article ..........5

  II.    The district court erred in finding that PSEG would suffer irreparable
        harm if injunctive relief were not granted……………………….…………13

  III.   The district court erred in determining that the balance of equities
        weighs in PSEG's favor………………………………………………………18

  IV.  The district court erred in finding that a mandatory preliminary
        injunction would be in the public interest…………………………………23

CONCLUSION………………………………………………………...24

CERTIFICATE OF COMPLIANCE….………..………………………………25

CERTIFICATE OF SERVICE.……………………...………………………………26

# TABLE OF AUTHORITIES

## Cases

*2311 Racing LLC v. NASCAR, LLC*, 139 F.4th 404 (4th Cir. 2025) ........................5

*Am. Educ. Rsch. Ass'n v. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 111436
    (D. Md. June 12, 2025) ..........................................................................6

*Andersen v. Leavitt*, 2007 U.S. Dist. LEXIS 59108 (E.D.N.Y. Aug. 13, 2007) .......1

*Bd. of Cnty. Comm'rs v. Lowery*, 136 P.3d 639 (Okla. 2006)................................11

*Bd. of Cnty. School Comm'rs of Worcester Cnty. v. Goldsborough*,
    90 Md. 193 (1899). ..........................................................................................8

*Catalent Pharma Sols., LLC v. Woodard*, 2025 U.S. Dist. LEXIS 141168
    (D. Md. July 23, 2025) .........................................................................19

*Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351
    (3d Cir. 1980) ........................................................................................18

*Davis v. Bd. of Educ.*, 166 Md. 118 (1934)……………………………………….8, 10

*Di Biase v. SPX Corp.*, 872 F.3d 224 (4th Cir. 2017). .................................... 13, 14

*Dillon-Capps v. Ohana Growth Partners, LLC*,
    2025 U.S. Dist. LEXIS 24932 (D. Md. Feb. 12, 2025)………………5, 6, 13, 18

*E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004)........................17

*Future Field Sols., LLC v. Norstrand*, 2023 U.S. Dist. LEXIS 229354
    (D. Md. Dec. 27, 2023) ..........................................................................14

*Mayor of Baltimore City v. Valsamaki*, 397 Md. 222 (2007).. ...............................23

*McCurdy v. Mt. Valley Pipeline, LLC*, 2015 U.S. Dist. LEXIS 96062
    (S.D.W. Va. July 23, 2015)........................................................... 12, 13

*Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613 (Tex. 2022)........11

*Mountain Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197 (4th Cir. 2019)........17

*Reading Area Water Auth. v. Schuylkill River Greenway Ass'n*, 100 A.3d 572 (Pa. 2014) ................................................................................................10

*Stansbury v. MDR Dev., L.L.C.*, 390 Md. 476 (2006) ...............................23

*Sun Microsystems, Inc. v. Microsoft Corp.*, 333. F.3d 517 (4th Cir. 2003) ..........5, 6

*Thornhill v. Aylor*, 2017 U.S. Dist. LEXIS 80330 (W.D. Va. May 25, 2017)........10

*Torres Advanced Enter. Solutions LLC v. Mid-Atlantic Professionals Inc.*, 2013 U.S. Dist. LEXIS 21722 (D. Md. Jan. 28, 2013)........................18

*United States v. 8,557.16 Acres of Land*, 115 F. Supp. 311 (N.D.W. Va. 1935)…10

*United States v. Abdelshafi*, 592 F.3d 602 (4th Cir. 2010) ......................7

*United States v. George*, 946 F.3d 643 (4th Cir. 2020). ...........................7

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) ................................................13

**Statutes and Rules**

Fed. R. App. P. 29……………………………………………………………………3

Md. Code Ann., Nat. Res. § 3-306................................................9

Md. Code Ann., Pub. Util. § 7-207............................................2, 11

Md. Code Ann., Real Prop. § 12-111 ............................. 4, 6, 7, 8, 10, 11

Natural Gas Act, 15 U.S.C. §§ 717, *et seq.* ................................9

**Other Authorities**

4 Am. Jur. 2d Amicus Curiae § 3 (updated May 2007)……………………………1

*In re Application of PSEG Renewable Transmission LLC*, Case No. 9773 (Md. Pub. Serv. Comm'n. 2024). ...........................................1

Order Establishing Procedural Schedule for the MPRP (PSC Docket No. 639),
    available at https://webpscxb.psc.state.md.us/DMS/case/9773
    (Sept. 11, 2025)………………………………………………….14, 15, 16

## INTERESTS OF THE *AMICUS CURIAE*

The County Commissioners of Carroll County, Maryland ("Carroll County") have a unique and important interest in this appeal. The approximately 67-mile transmission line that Appellee PSEG Renewable Transmission, LLC's ("PSEG") is proposing to construct, known as the Maryland Piedmont Reliability Project ("MPRP"), runs through the entire length of Carroll County, as well as through neighboring Baltimore County and Frederick County. Carroll County is an intervening party in the proceeding before the Maryland Public Service Commission as to PSEG's application for Certificate of Public Convenience and Necessity ("CPCN"). *See In re Application of PSEG Renewable Transmission LLC*, Case No. 9773 (Md. Pub. Serv. Comm'n. 2024).

As a local government, Carroll County has independent concerns with the issues raised in this case and will be able to provide important and valuable insight as to the issues on appeal. *See Andersen v. Leavitt*, 2007 U.S. Dist. LEXIS 59108, *17 (E.D.N.Y. Aug. 13, 2007). Courts are more likely to grant leave to appear as an *amicus curiae* to an entity, like Carroll County, that is "a public body clothed with the powers and duties affecting the public interest, and involved in the subject matter presented before the court." *Id.* at *7 (quoting 4 Am. Jur. 2d Amicus Curiae § 3 (updated May 2007)).

1

The Maryland General Assembly has recognized the important role a county has in the Certificate of Public Convenience and Necessity application process before the PSC when that county would be affected by the proposed transmission line. *See, e.g.*, Md. Code Ann., Pub. Util. § 7-207(c)(1)(ii) (stating that the governing body and executive of a county in which in part of the transmission line would be constructed is to receive immediate notification of an application for a CPCN); *id.* § 7-207(d)(1)-(2) (providing that an opportunity for public comment and a public hearing, held jointly with the governing body of the affected county, must be held in that county); *id.* § 7-207(e)(1) (stating that the PSC "shall take final action on an application for a certificate of public convenience and necessity only after due consideration of: (1) the recommendation of the governing body of each county or municipal corporation in which any portion of the construction of the generating station, overhead transmission line, or qualified generator lead line is proposed to be located"). Carroll County can similarly offer important insight to the issues on appeal here.

Of the 117 property owners that PSEG has sued in this matter, 64 are located in Carroll County.  (JA49-62, JA130). The matter of this appeal—the district court's granting of an injunction allowing PSEG and its representatives to enter and remain on these Carroll County properties for an open-ended period of time to conduct unspecified environmental testing—is of significant concern to Carroll

2

County. In particular, Carroll County is concerned as to the significant infringement of private property rights of Carroll County's residents by PSEG entering the properties, the unrestricted access that PSEG will have to lands in Carroll County that are subject to easements or conservation protections, and the disruption that this will have on agricultural operations and property values in Carroll County.

## AUTHORSHIP STATEMENT

This brief was authored in whole by Carroll County and its counsel. No party and no other person contributed money that was intended to fund preparing or submitting this brief. Pursuant to Fed. R. App. P. 29(a)(4)(d), the authority for Carroll County, Maryland to file this brief is derived from the consent of all parties. *See* Fed. R. App. P. 29(a)(2). Appellants, by its counsel Harris Eisenstein, Esq., have consented to the filing of this brief, and Appellee, by its counsel Emily Wilson, Esq., have stated that it does not oppose the filing of this brief.

## SUMMARY OF THE ARGUMENT

The district court erred in granting PSEG's motion for preliminary injunction. The issuance of a preliminary injunction is a rare and extraordinary remedy and requires the movant to satisfy all four elements in order to be issued. PSEG had not met this burden.

3

The court erred in finding that PSEG was likely to succeed on the merits of its claim that injunctive relief should issue pursuant to § 12-111 of the Real Property Article of the Maryland Annotated Code. To the contrary, § 12-111 authorizes the requested surveys to be conducted only if the entity seeking to conduct the surveys has the "power of eminent domain." PSEG—which is not a State agency—does not have the power eminent domain since a Certificate of Public Convenience and Necessity has not been issued to it. PSEG therefore cannot be said to have the right to conduct surveys on Appellants' properties under this statute.

The district court further erred in its findings that PSEG will be irreparably harmed, that the balance of equities weighs in PSEG's favor, and that there is a public interest in allowing this open-ended, unrestricted infringement of Appellants' private property rights. The court discounted the significant harm that Appellants will face if PSEG's representatives have such unrestricted access to their properties. For instance, a number of Appellants own small farms in Carroll County. These farms—many of which are multigenerational family farms—serve as the backbone of Carroll County's agricultural industry. The court permitting PSEG representatives to have unrestricted access to these farms and other land in order to perform unspecified testing will disrupt the agricultural operations of these

farms, may devalue farm and property values, and will have a significant impact on Appellants' private property rights.

Moreover, Carroll County is the owner of property in the path of the proposed transmission line. There are more than 1,760 acres of Carroll County easements that are impacted by the proposed transmission line. The court's decision may allow PSEG representatives to have unfettered access to Carroll County government property.

For the reasons set forth herein, the district court's order granting PSEG's request for preliminary injunction should be reversed.

## **ARGUMENT**

**I.    PSEG is not likely to succeed on the merits of its claim as it does not have the power of eminent domain and therefore cannot access Appellants' properties under § 12-111 of the Real Property Article.**

"[P]reliminary injunctions are extraordinary interlocutory remedies that are granted in limited circumstances and then only sparingly." *Sun Microsystems, Inc. v. Microsoft Corp.*, 333. F.3d 517, 524 (4th Cir. 2003). The "extraordinary and drastic remedy" of a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *2311 Racing LLC v. NASCAR, LLC*, 139 F.4th 404, 408 (4th Cir. 2025). This clear showing must be as to each of the four factors for a preliminary injunction; a "[f]ailure to establish just one of these factors dooms a motion for a…preliminary injunction." *Dillon-Capps v.*

5

*Ohana Growth Partners, LLC*, 2025 U.S. Dist. LEXIS 24932, *6 n.5 (D. Md. Feb. 12, 2025).

A mandatory preliminary injunction, which alters instead of preserving the status quo, is "disfavored, and warranted only in the most extraordinary circumstances," and also requires an "even more searching" standard of review. *Id.* at *2; *Sun Microsystems, Inc.*, 333 F.3d at 525. *See also Am. Educ. Rsch. Ass'n v. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 111436, *9 (D. Md. June 12, 2025) (stating that mandatory preliminary injunctions are "particularly disfavored" and should only be granted when "the applicant's right to relief [is] indisputably clear").

The district court improperly found that PSEG was likely to succeed on the merits of the one cause of action that it brought: injunctive relief pursuant to § 12-111 of the Real Property Article. (JA99-100, JA2509-2512). The court's finding that that PSEG is a "body…corporate having the power of eminent domain" conflicts with the governing statutes. (JA2493). The district court erred in finding that PSEG may essentially be considered an instrumentality of the State or, alternatively, that PSEG has the "power of eminent domain." (JA2494-2496).

Under Real Prop., § 12-111, "[c]ivil engineers, land surveyors, real estate appraisers, and their assistants acting on behalf of the State or of any of its instrumentalities or ***any body politic or corporate having the power of eminent domain***" may enter a private property, "after every real and bona fide effort to

6

notify the owner or occupant in writing with respect to the proposed entry," in

order to conduct certain specified actions. Md. Code Ann., Real Prop. § 12-111(a)

(emphasis added). Section 12-111 states in relevant part:

> (a) Civil engineers, land surveyors, real estate appraisers, and their assistants acting on behalf of the State or of any of its instrumentalities or any body politic or corporate having the power of eminent domain after every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry may:
>
>> (1) Enter on any private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement;
>>
>> (2) Set stakes, markers, monuments, or other suitable landmarks or reference points where necessary; and
>>
>> (3) Enter on any private land and perform any function necessary to appraise the property.

Md. Code Ann., Real Prop. § 12-111(a).

In interpreting a statute, courts "first and foremost strive to implement

congressional intent by examining the plain language of the statute." *United States*

*v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Abdelshafi*,

592 F.3d 602, 607 (4th Cir. 2010)). If there is no ambiguity or "clearly expressed

legislative intent to the contrary," then the court must "apply the plain meaning of

the statute, which is determined by reference to the words' ordinary meaning at the

time of the statute's enactment." *George*, 946 F.3d at 645 (internal quotations

omitted). Statutes related to eminent domain "are to be strictly construed." *Davis v. Bd. of Educ.*, 166 Md. 118, 120 (1934).

Here, in examining the plain language of Real Prop., § 12-111, PSEG cannot be considered an instrumentality of the State with the authority of eminent domain. PSEG is a New Jersey-based transmission development company created in 2021 for the purpose of developing, constructing, and owning transmission projects. (JA66, JA89). PSEG is not a "body politic." Though not defined in the Real Property Article, "body politic" has been defined as a group of people who are given governmental authority that can only be exercised collectively, such as a board of education. *See Bd. of Cnty. School Comm'rs of Worcester Cnty. v. Goldsborough*, 90 Md. 193, 203-04 (1899). PSEG is also not an instrumentality of the State of Maryland, nor is it any way acting on behalf of or as part of the Power Plant Research Program ("PPRP"), which is a division of the Maryland Department of Natural Resources. (JA2468).

In fact, the PPRP has a significant oversight role in the ongoing Public Service Commission proceedings. When the Maryland Public Service Commission ("PSC") receives an application for a Certificate of Public Convenience and Necessity related to the construction of a power plant, the PSC provides the application to the PPRP to "complete an independent environmental and socioeconomic project assessment report and any additional required study and

8

investigation concerning the application." Md. Code Ann., Nat. Res. § 3-306(a)(1), (b)(1)(i).

Though PPRP has the statutory duty to review PSEG's CPCN application, this does not mean that PSEG—a transmission development company located in New Jersey—has somehow become an "instrumentality" or agent of PPRP or the State of Maryland. Further, even though PPRP has made certain recommendations to PSC about the incompleteness of PSEG's initial CPCN application because of the lack or incompleteness of certain surveys, PPRP was not itself mandating or directing PSEG to complete the surveys.

Even if PPRP were requiring PSEG to conduct the surveys—which, again, it was not—that would not transform PSEG into an agent of the State. Section 3-306 of the Natural Resources Article is clear that PPRP is to conduct "an *independent* environmental and socioeconomic project assessment" of PSEG's application. Md. Code Ann., Nat. Res. § 3-306(a)(1), (b)(1)(i) (emphasis added). PSEG's CPCN application is not being prepared on behalf of or for the benefit of PPRP. Merely because a State agency has statutory requirements to review a company's application does not transform the company into a State agent. Moreover, the PPRP does not have the authority to grant the power of eminent domain. The PPRP instead makes recommendations and acts in an advisory role. As such, the court erred in finding that PSEG "in conducting the surveys and

9

effectuating PPRP's directive" was "at least in part acting on behalf of the State or [one] of its instrumentalities." (JA2495).

While Real Prop. § 12-111 permits a "body politic or corporate having the power of eminent domain" to send its representatives onto private property for the purpose of conducting surveys or other testing, this provision is not applicable to PSEG as it is not a "body politic or corporate having the power of eminent domain." The district court's interpretation of the statute—that PSEG does not currently have to have the "power of eminent domain" but that the "context" of the statute provides that it is applicable if the entity may obtain the power of eminent domain at some time in the future—is flawed. The plain language of Real Prop. § 12-111 provides that the entity is one that _has_ the power of eminent domain, not that it may obtain the power of eminent domain at some point in the future.

Statutes confirming the power of eminent domain are to be strictly construed. _Davis_, 166 Md. at 120. _See also Thornhill v. Aylor_, 2017 U.S. Dist. LEXIS 80330, *8-9 (W.D. Va. May 25, 2017); _United States v. 8,557.16 Acres of Land_, 115 F. Supp. 311, 314 (N.D.W. Va. 1935). This is particularly true when there is an invasion of property rights and when there may be significant intrusions on the rights of private property owners. _See Reading Area Water Auth. v. Schuylkill River Greenway Ass'n_, 100 A.3d 572, 579 (Pa. 2014) ("Because eminent domain is in derogation of private rights, any legislative authority for its use must

be strictly construed in favor of the landowner."); *Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 619 (Tex. 2022) ("Because statutes conferring eminent-domain authority intrude on fundamental property rights, in instances of doubt as to the scope of the power, such statutes are strictly construed in favor of the landowner") (internal quotations omitted); *Bd. of Cnty. Comm'rs v. Lowery*, 136 P.3d 639, 647 (Okla. 2006). ("We adhere to the strict construction of eminent domain statutes…, mindful of the critical importance of the protection of individual private property rights...."). In strictly construing Real Prop. § 12-111, the plain language is clear that an entity like PSEG must currently have the power of eminent domain, not some theoretical possibility that it could potentially obtain the power of eminent domain in the future.

To interpret the statute otherwise would invade the authority of the PSC to determine whether an entity like PSEG may be granted a Certificate of Public Convenience and Necessity and thereby obtain the power of eminent domain. Contrary to the court's finding, PSEG has not obtained the power of eminent domain just because it was selected by PJM for the transmission line project and Federal Energy Regulatory Commission ("FERC") accepted the Designated Entity Agreement. (JA2497). Under § 7-207(b)(3)(v) of the Public Utility Article, PSEG does not have the power of eminent domain because such delegation occurs only "[o]n issuance of a" CPCN. It is not disputed that PSEG has not been granted a

11

CPCN and, in fact, may never receive a CPCN. Its CPCN application is in the early stages of review, and there is still extensive discovery, briefing, hearings, and opportunities for members of the public and additional stakeholder to express their views at public hearings and in comments to the PSC. The fact that PSEG does not have the power of eminent domain was seemingly recognized by the district court, which stated that "the PSC is in the process of deciding whether to grant [the right of eminent domain]." (JA2514).

In *McCurdy v. Mt. Valley Pipeline, LLC*, 2015 U.S. Dist. LEXIS 96062, *1 (S.D.W. Va. July 23, 2015), the defendant sought to build an approximately 300-mile natural gas pipeline from West Virginia to Virginia. The defendant was required to receive a Certificate of Public Convenience and Necessity before construction could begin, and the certification process with FERC required defendant to conduct surveys and environmental studies along the proposed route. *Id.* at *2. Pursuant to the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.*, a party may exercise "the right of eminent domain" over land needed for a project upon receiving a CPCN from FERC. *Id.* The court found that, without a CPCN or a conditional CPCN, which would provide defendant the power of eminent domain, the defendant was not permitted to enter plaintiffs' properties to conduct the surveys required by FERC. *Id.* at *9-10.

12

As in *McCurdy*, because PSEG has not received a CPCN—and may never be granted a CPCN—it does not have the statutory authority to exercise the right of eminent domain by entering Appellants' private properties to conduct surveys and other testing. The district court therefore erred in finding that PSEG was likely to succeed on the merits of its claim.

## II.    The district court erred in finding that PSEG would suffer irreparable harm if injunctive relief were not granted.

The district court erred in determining that PSEG had met its burden of making a clear showing that it would suffer irreparable harm in the absence of a preliminary injunction. The district court stated that "the pertinent component of the standard for issuance of a preliminary injunction is whether PSEG has shown a likelihood of success on the merits," showing the significant weight the court placed on that first factor without duly considering the other three factors, all of which must be met in order for a preliminary injunction to be granted. (JA2470). *See Dillon-Capps*, 2025 U.S. Dist. LEXIS 24932, at *6 n.5.

In order to obtain injunctive relief, "a plaintiff must demonstrate more than just a 'possibility' of irreparable harm." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a 'clear showing' that the plaintiff is entitled to relief." *Id.* (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008)). *See*

13

*also Future Field Sols., LLC v. Norstrand*, 2023 U.S. Dist. LEXIS 229354, \*15 (D. Md. Dec. 27, 2023) (stating that a plaintiff must show "actual and imminent harm, not just the 'mere possibility' of harm in the future"). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough," and the possibility that the plaintiff may be compensated or have some other relief available to it in the future "weighs heavily against a claim of irreparable harm." *Di Biase*, 872 F.3d at 230.

The primary basis for the court's finding that PSEG will suffer irreparable harm was PSEG's contention that it would not be able to complete the surveys or obtain other information that PPRP had requested, which would cause delay with its application, and it would not be able to proceed in time for it to begin construction of the transmission line in January 2026. (JA2512-2513). But based on the recently-issued schedule by PSC, it would not be possible anyway— separate and apart from the PSEG conducting the field surveys—for PSEG to begin construction in January 2026.

On September 11, 2025, the PSC issued an Order Establishing a Procedural Schedule for the Maryland Piedmont Reliability Project.[1] As reflected in this Scheduling Order, PSEG had sought an expedited schedule for the CPCN review

---

[1] *See* Order Establishing Procedural Schedule for the MPRP ("Procedural Schedule") (PSC Docket No. 639), available at https://webpscxb.psc.state.md.us/DMS/case/9773 (Sept. 11, 2025).

process in the PSC to meet PJM Interconnection, LLC's ("PJM") in-service date of June 2027 for the MPRP. *See* Procedural Schedule, at 2. PPRP had represented before the PSC that PSEG's expedited proposed schedule was "implausible." *Id.* at 3. In proposing its own schedule, at PSC's request, PSEG had argued that it was not required under COMAR 20.79.04 to include field studies as part of its CPCN application. *Id.* at 2.

The PSC rejected PSEG's proposed schedule. *Id.* at 5-8. In particular, the PSC stated that it refused "to accept the premise that denial of a CPCN will result in electric blackouts for certain Maryland customers without any examination of whether that would actually be the case or whether there are alternatives to [PSEG's] proposal to address any reliability issues. *Id.* at 6. Instead, the schedule issued by PSC provides, in relevant part, that PSEG has until March 2, 2026 to file an updated analysis, including field reports for the properties, other than time-of-year restricted field studies. *Id.* at 7. However, the PSC noted that the schedule was "subject to amendment should PSEG be unable to provide its field studies to PPRP in time to allow the parties to include them in their Direct Testimony." *Id.* at 7.

There will be written testimony due on September 2, 2026, public hearings in Carroll, Frederick, and Baltimore Counties in late September 2026, and additional written testimony in October and November 2026. *Id*. The evidentiary hearings before the PSC are scheduled for December 8-18, 2026, with post-hearing

15

briefs due on January 29, 2027 and February 12, 2027. *Id*. Therefore, the very earliest that PSC would render a decision about PSEG's CPCN application would likely be in March 2027.

PSEG is not under the pressure that it claimed to be under when the court granted the motion for preliminary injunction. PSEG had argued that it would suffer irreparable harm because there would be delay of the PSC's review of its application caused by an inability to conduct certain field surveys and information gathering which would affect its ability to meet the June 1, 2027 in-service deadline. Given the schedule set by the PSC, which also allows flexibility if PSEG needs additional time to conduct the surveys, it is not possible for PSEG to have the MPRP in service by June 1, 2027, since PSEG contended that it would need to begin construction in January 2026 to meet that deadline. (JA64).

Moreover, certain Appellants received a document from PSEG, titled "Temporary Right of Entry Form," that stated that PSEG's access may include "geo-technical borings," which would involve drilling holes in these landowners' properties. (JA330-331). The district court found that "PSEG does not seek authority to conduct any such geotechnical surveys." (JA2499). However, geo-technical surveys are one of the surveys that PPRP had recommended that PSEG conduct. (JA1718, 1731, 1847). It therefore may be the case that PSEG will need to conduct such invasive, geo-technical borings in order to complete its CPCN

16

application. As such, regardless of whether PSEG conducts the surveys that it has sought to perform as part of this preliminary injunction case, it may still not have all of the surveys that it needs.

Furthermore, the district court's finding of irreparable harm to PSEG was also premised on PSEG being "likely to lose any revenue it would otherwise have received had PSEG been able to meet the June 1, 2027 in-service deadline." (JA2515-2516). However, given the time that PSC has determined it needs to consider the CPCN application, PSEG will not be able to meet the June 1, 2027 in-service "deadline." This is not a result of any conduct by Appellants. Instead, it may very well be the case that the PSC does not grant PSEG's CPCN application—for reasons completely unrelated to any surveys conducted on the properties—or that PSC does not grant PSEG the CPCN for other reasons.

The court improperly found that PSEG would be irreparably harmed because PSEG had "prospective financial losses" and "anticipated future financial losses." (JA2515-2516). To support this, the court heavily relied on *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004) and *Mountain Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197 (4th Cir. 2019). But both cases are readily distinguishable—which the district court itself acknowledges—because those cases involved natural gas companies that had already received Certificates of Public

17

Convenience and Necessity and there was no dispute that they had the right to take property pursuant to eminent domain. (JA2514).

Unlike in those cases, PSEG has not received a CPCN and any alleged prospective economic injury is speculative. The district court found that PSEG had "shown irreparable harm sufficient to justify issuance of a preliminary injunction, specifically in the form of lost revenues that PSEG would incur in the absence of an injunction." (JA2515). But the court's vague finding did not point to any evidence of potential lost revenue nor did PSEG present evidence of economic harm, beyond costs of environmental consultants and attorneys. (JA151). But such alleged economic harm is readily calculable and not the type of damages that are considered "irreparable harm" for purposes of a preliminary injunction.

For these reasons, PSEG failed to show that it would suffer irreparable harm.

## III.    The district court erred in determining that the balance of equities weigh in PSEG's favor.

The district court erred in finding that the balance of equities tips in PSEG's favor. *Dillon-Capps*, 2025 U.S. Dist. LEXIS 24932, at *2. In considering the balance of equities factor, the court must "weigh any potential harm to the nonmoving party" and "the chance of harm to any interested person, as well as any potential harm to the public." *Torres Advanced Enter. Solutions LLC v. Mid-Atlantic Professionals Inc.*, 2013 U.S. Dist. LEXIS 21722, *16 (D. Md. Jan. 28, 2013) (citing *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351,

18

356-57 (3d Cir. 1980)). *See also Catalent Pharma Sols., LLC v. Woodard*, 2025 U.S. Dist. LEXIS 141168, *11 (D. Md. July 23, 2025) (stating that courts "must weigh the balance of equities and the relative harms to the parties," including considering the harm to the nonmoving party if the injunctive relief is improperly granted).

There is a likelihood of significant harm to Appellants by the open-ended access by PSEG and its agents to Appellants' private property. The court reasoned that the balance of equities weighs in PSEG's favor because the studies would be minimally invasive, PSEG is only seeking a temporary right of entry as opposed to permanent right of entry, and Appellants can file a cause of action for damages if their land or personal property is damaged or destroyed. (JA2517). But it is not clear from the evidence, or from the court's preliminary injunction order, that the studies that PSEG will be permitted to do pursuant to the order will be "noninvasive," and the court's order goes beyond just allowing PSEG on Appellants' property for a "temporary" period of time.

The district court's order granting PSEG's motion for preliminary injunction permits PSEG to "enter onto the properties of Respondents and to remain on the property to the extent reasonably necessary to make surveys, run lines or levels, or obtain information relating to the acquisition and future use of the properties in connection with the Maryland Piedmont Reliability Project."

19

(JA2522). Such access is permitted until the PSC grants or denies PSEG's
Certification of Public Convenience and Necessity application. (JA2522). Based on
the PSC's procedural schedule, which was issued on September 11, 2025, the PSC
will not render a decision on PSEG's CPCN application until at least March 2027
at the very earliest. This means that PSEG will have unrestricted access to enter
Appellants' properties for at least the next 18 months. The only condition in the
district court's Order is that PSEG must give Appellants at least 24 hours' notice
that they intend to enter the property and such notice shall be provided by taping a
notice on Appellees' front door. (JA2522). PSEG only needs to give one notice
even if entering on multiple days. (*Id.*).

The district court's finding that the balance of equities is weighed in PSEG's
favor failed to sufficiently take into account the harm to Appellants if PSEG's
representatives can enter on Appellants' properties for months or years and impose
on Appellants' ability to fully use and enjoy their land. Further, the district court
made its ruling without it being clear what PSEG's testing, surveys, and other
actions on the property will entail and what harm such testing, surveys, or other
conduct may cause to Appellants. The court's preliminary injunction order is also
extremely broad in that it allows PSEG to enter Appellants' properties to "obtain
information relating to the acquisition and future use of the properties in
connection with the Maryland Piedmont Reliability Project," without specifying

20

the type of testing that may be done, the location of the testing or information

gathering on Appellants' properties, how invasive the testing or information

gathering will be, or the frequency of the testing or information gathering.

(JA2522). This sweeping order may lead to unintended consequences.

It should not be that PSEG can enter the property of these Carroll County

landowners with just 24 hours' notice over the next 18 or more months to perform

this undefined testing or to take steps towards "acquisition and future use of the

properties."

      Appellants had presented extensive evidence to the district court that there

will be significant disruption to the landowners and to the environment by PSEG's

intrusion on their properties. Appellants had raised that there was a likelihood that

this "[i]ndefinite access to sensitive farmland could result in biosecurity

breaches…[o]r physical damage to the land." (JA1957). This includes the potential

of "exposing livestock to pathogens from surveyor movement between farms."

(JA1957). The presence of PSEG's agents conducting testing will likely interrupt

certain Appellants from conducting their businesses. Another consequence is that

the court's order will create a cloud on the title of these Carroll County

landowners. If these landowners seek to sell their property in the next 18 or more

months, they would be conveying title subject to PSEG's "acquisition and future"

21

use of the property. This is likely to have an effect on the property value in Carroll County.

The record reflects the significant harm and impact this open-ended and unrestricted access will have on Appellants. Carol Knobloch, who owns property in Carroll County, asserted that PSEG had sought to perform surveys of her entire property, not just the part of her property where the proposed transmission line would be. (JA2097). Matthew Lee Dell, who is a member of Dells Generation Farms, LLC, which is a family farm that owns more than 192 acres in Carroll County, and the owner of additional real property in Carroll County, attested that, "to date, we still do not know what specific studies" PSEG "intend to perform or what is involved." (JA1952-53). Without such knowledge, he was concerned that "such access would disrupt our farming operations and cause damage to our farmland and crops." (JA1953). He raised that continued, unfettered access to his property by PSEG will cause harm to the family farm, "[in]cluding loss of business and income; disruption to ongoing farming operations, schedules, and productivity; destruction of crops resulting in a loss of yield; spoliation of mature crops; soil damages, disturbance, and compaction including possible soil contamination; and damage to existing structures on the properties." (JA1953).

Mr. Dell raised another issue shared by other Appellants that his properties "have been permanently preserved by the Carroll County Agriculture Land

22

Preservation Program and/or the Maryland Department of Agriculture on behalf of the Maryland Agricultural Land Preservation Foundation ("MALPF") for the purpose of preserving and conserving agricultural land, woodland and open space," as well as the Maryland Conservation Reserve Enhancement Program. (JA1952). He was therefore concerned that PSEG would be asking him "to violate the terms of" and his legal obligations under "the respective Preservation Easements that we entered into with the State and County." (E.1953).

The harm that the Appellants will suffer by PSEG being granted access to their private property and businesses is significant, and it was an error for the court to find that PSEG would suffer greater harm.

## IV.    The district court erred in finding that a mandatory preliminary injunction would be in the public interest.

The court improperly found that the granting of a preliminary injunction to PSEG was in the public interest. "The right to private property, and the protection of that right, is a bedrock principle of our constitutional republic." *Mayor of Baltimore City v. Valsamaki*, 397 Md. 222, 241 (2007). *See also Stansbury v. MDR Dev., L.L.C.*, 390 Md. 476, 479 n.1 (2006) ("One of the most important incidents of ownership of private property is the right to exclude others. Without that right it would not be 'private' property.").

The district court's findings related to the public interest were that the PPRP "has determined that conducting the studies at issue here is necessary for it to

23

discharge its statutory duties," and that conducting these studies is therefore in the public interest. (JA2518). But the PPRP only recommended that the PSC find that PSEG's CPCN application is not complete because the application lacked "a sufficient summary of the environmental and socioeconomic effects from the construction and operation of the Project, including field studies." (JA148). The PPRP was not making any sort of declaration that such field studies are in the public interest.

The district court's decision is an invasion of the constitutional rights of Appellants and circumvents the PSC's statutory role in deciding whether the MPRP is in the public interest. The court's granting of the preliminary injunction is not in the public interest.

## **CONCLUSION**

For the foregoing reasons, the Court should reverse the district court's decision, vacate the injunction issued by the district court, and remand this matter for further proceedings.

Respectfully submitted,

By: _____/s/_____

Timothy F. Maloney
Alyse L. Prawde
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
Tel: (301) 220-2200
tmaloney@jgllaw.com
aprawde@jgllaw.com
*Counsel for Amicus Curiae*
*County Commissioners of*
*Carroll County, Maryland*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief was prepared using proportionally spaced, serif typeface (Times New Roman, 14 point) using Word 2016.

2. Exclusive of the table of contents, table of authorities, request for oral argument, the cover, and the certificate of service, the brief complies with Fed. R. App. Proc. 32(a)(7)(B) because it contains 5,655 words.

3. I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, we will provide an electronic version of the brief and/or a copy of the word or line print out.

_____/s/_____
Alyse L. Prawde

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of September, 2025, the foregoing Brief of *Amicus Curiae* County Commissioners of Carroll County, Maryland was served via ECF on all counsel of record.

_____/s/_____
Alyse L. Prawde
